## SARAH HUGHES *vs.* ISAAC GROSS & another.

Suffolk.    January 14, 15, 1896. — May 19, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Contract as affected by Death of Partner — Breach of Contract to employ a Person for a Second Year — Evidence.*

A contract of service is not dissolved by the death of one of the partners with whom it is made, if the business goes on without a break and the parties seem to have assumed that the contract was not ended by the death of the partner.

A firm composed of A. and B. entered into a written contract with C. to employ him for a year, with provision as to employment for an additional year. Before the termination of the first year B. died and D. became a partner of A., the new firm taking the assets and assuming the liabilities of the old one. Thereafter C. was paid out of the funds of the new firm, and, in an action by him on the written contract against A. and D., "copartners under the firm name of A. and B.," for refusing to employ him a second year, testified that he was referred to D. for further discussion of his relations with the firm, and had several interviews with him, in which D. wanted to terminate the contract. *Held,* that the signature to the contract did not bind D., but that the Superior Court might allow the plaintiff to discontinue as against D., and to take a judgment against A.

At the trial of an action on a written contract for failure to employ the plaintiff for an additional year, a letter of his answering the reasons for dissatisfaction given in the notice from his employer, as required by the contract, that he would not be employed beyond the year, is admissible only for what light it may throw on the defendant's reply and subsequent conduct, and not as evidence of admissions by the defendant.

Where the right of refusal to employ a person a second year is placed by a written contract upon special causes, and is restricted more than the implied right to discharge for cause, at the trial of an action on the contract for failure to employ the plaintiff for the additional year the defendant cannot be allowed to prove other causes than those specified in the contract.

CONTRACT against Isaac Gross and Bernhard Sommer, copartners under the name of Gross and Strauss, for failure to employ the plaintiff for an additional year, according to the terms of a written agreement signed by the plaintiff and Gross and Strauss. Trial in the Superior Court, before *Sherman*, J., who allowed a bill of exceptions, in substance as follows.

The written agreement which was executed by Gross and Strauss of the first party, and the plaintiff as the second party, on April 21, 1892, recited that the first party agreed to employ the second party for one year from April 25, 1892, as assistant manager of the cloak department in their store in Boston, and to pay her the sum of twenty-five dollars per week; that the contract might be cancelled by the second party at any time by giving one week's notice in writing, and that at her election it might be continued for an additional year, to April 25, 1894, upon the same terms, provided that she signified her election so to prolong it on or before April 25, 1893, by giving the first party a notice in writing to that effect, and " provided also that the services of said second party have been reasonably satisfactory to said first party until January 1, 1893 ; also provided that said first party gives written notice to said second party of any cause of dissatisfaction on or before January 1, 1893."

There was evidence tending to show that when the agreement was signed the firm of Gross and Strauss was composed of Isaac Gross and Philip Strauss; that the latter died on November 1, 1892; that the business was carried on by the surviving partner to February 1, 1893, when a new partnership was formed and the defendant Sommer became a member of the firm; that no change was made in the place of business or firm name, the new firm taking the assets and assuming the liabilities of the old one, and that the plaintiff gave due notice of a desire to continue the contract for an additional year.

The plaintiff testified that no complaints of dissatisfaction were made to her by any one until December 28, 1892, when Isaac Gross handed her a letter of that date, signed by Gross and Strauss, which stated : " We do not care to employ you as assistant manager of the cloak department under the contract existing between us, dated April 21, 1892, beyond the one year named in said contract, which expires April 25, 1893. Your

services have not been reasonably satisfactory to us for several reasons." She further testified that Gross referred her to Charles Strauss, the manager of the cloak department, who said that changes were going on in the firm, but stated no causes of dissatisfaction; that on December 31, 1892, Gross handed her a letter of that date which stated five causes of dissatisfaction; that she wrote a letter of the same date, addressed to Gross and Strauss, and handed it to Isaac Gross on January 2, 1893; and that a letter dated January 6, 1893, signed by Gross and Strauss, was subsequently handed to her which stated: "Referring to your letter to us of the 31st of December last, we beg to say that we shall insist upon the notice we gave you on the 28th and 31st of December, and shall, in accordance with the terms of our contract of the 21st of April last, consider said contract terminated on the 25th of April next. We do not care to enter into any further correspondence on the subject." She also testified that after April 1, 1893, she was not allowed to work in the store. The plaintiff's letter of December 31, 1892, in answer to the letter of the same date addressed to her by Gross and Strauss, answered *seriatim* the five reasons for dissatisfaction given in the letter of Gross and Strauss, and, the defendants having objected to its admission in evidence, it was admitted only for what light it might throw on the defendants' reply and subsequent conduct, and not as evidence of admissions by the defendants; and the defendants alleged exceptions. The plaintiff also testified that she was referred to Sommer for further discussion of her relations with the firm, and had several interviews with him, in which he wanted to terminate the contract.

For the purpose of showing other causes of dissatisfaction than those stated in the letters of the defendants, their counsel, in both direct and cross examination, asked various questions for the purpose of showing that the plaintiff was to be at the store of the defendants at a certain hour in the morning, but that she was frequently late, and did not properly attend to business in business hours; that she mismanaged in the department of which she had charge, so that the goods were in a state of confusion, and could not be properly handled; that while in the employ of the defendants she talked with their employees about the

financial condition of the firm, and talked about its probable failure; that the discipline of the plaintiff's department was very bad, and caused by the plaintiff's conduct; and that the defendants talked with the plaintiff about these several matters, and complained of them to the plaintiff. But the judge excluded all of said questions and testimony, and ruled that the defendants could not show any other causes of dissatisfaction with the plaintiff than those set out in the letter of December 31, 1892. The defendants contended that the evidence was admissible, and that they could show causes other than those specified to prove that the plaintiff's services were not reasonably satisfactory according to the terms of the contract, and excepted to these rulings.

Sommer testified that he continued to pay the plaintiff twenty-five dollars per week as long as she stayed there, and he knew he was paying it under that contract; that he assumed that the notice was sufficient to terminate it, and that the twenty-five dollars a week came out of the funds of the new firm.

The defendant Sommer asked the judge to rule that there was no evidence to warrant a verdict against him, and that a verdict be ordered for him. The judge declined so to rule, and he excepted.

The judge ordered the jury to find a special verdict upon the following issue: " Did Bernhard Sommer, as a partner of the new firm of Gross and Strauss, by his acts, conduct, or declarations, agree to assume and adopt this contract between the plaintiff and the old firm of Gross and Strauss?"

To this question the jury made answer in the affirmative, and found a general verdict for the plaintiff; and the defendants alleged exceptions.

The defendants further requested the judge to rule that by the death of Philip Strauss the partnership was dissolved and the contract was terminated. The judge refused so to rule; and the defendants excepted.

*E. N. Hill,* for the defendants.

*J. Woodbury & J. M. Merriam,* for the plaintiff.

HOLMES, J. This is an action of contract, for refusing to employ the plaintiff a second year. The plaintiff had a verdict, and the case is here on exceptions. The original contract was

in writing, and was made with two partners, Gross and Strauss, for one year from April 25, 1892, with a conditional right of renewal on the side of the plaintiff for one year more. On November 1, 1892, during the first year of the plaintiff's employment, Strauss died, and the business was carried on by Gross. The first question raised by the exceptions is whether Strauss's death ended the contract. At the end of December the plaintiff received a notice from Gross that she would not be employed beyond the first year, stating causes of dissatisfaction. There was an answer from the plaintiff, and a reply by Gross. Exceptions were taken to the admission of the plaintiff's letter in evidence, and to the exclusion of evidence of other causes of dissatisfaction beside those mentioned in the notice.

On February 1, 1893, the defendant Sommer became a partner in the business with Gross, the new firm taking the assets and assuming the liabilities of the old one. Thereafter the plaintiff was paid out of the funds of the new firm, and, according to the plaintiff's testimony, was referred to Sommer for further discussion of her relations with the firm, and had several interviews with him, in which he wanted to terminate the contract. Another exception is to the refusal to direct a verdict for Sommer.

We are of opinion that it could not be ruled, as matter of law, that the contract of service was dissolved by the death of a partner. We have no occasion to criticise the decisions in some of our States and in England and Scotland, where an opposite result was reached by a majority of the judges with reference to different kinds of business from the present, except to remark that the argument put forward in Scotland and elsewhere that the only contracting party was the firm, and that the firm had ceased to exist, does not agree with the common law. *Tasker* v. *Shepherd*, 6 H. & N. 575. *Hoey* v. *MacEwan*, 5 Ct. of Sess. (3d ser.) 814, 815. *Griggs* v. *Swift*, 82 Ga. 392. *Greenburg* v. *Early*, 30 Abb. N. C. 300, 303. The common law does not know the firm as an entity. *Hallowell* v. *Blackstone National Bank*, 154 Mass. 359, 363. A contract with a firm is a contract with the members who compose it. A joint contract to employ the plaintiff is not ended necessarily by the death of one of the contractors. *Martin* v. *Hunt*, 1 Allen, 418. And there is no universal necessity that death should have a greater effect when the joint

contractors are partners. *Fereira* v. *Sayres*, 5 W. & S. 210. If the death naturally would put an end to the business, as it so frequently does, very possibly it might end the employment. We have no need to consider what would be the result if in fact no further business was done except to wind up the affairs of the firm, as was the case in *Griggs* v. *Swift, ubi supra.* But this business went on without a break, and both parties seemed to have assumed that the plaintiff's contract was not ended by the death of Strauss.

But the foregoing suggestions are not enough to lay a foundation for the liability of Sommer, even assuming that there was evidence warranting the inference that he was content to be bound unless Gross escaped, and that he made an oral contract on the terms of the written agreement. The declaration is on the written instrument, and the refusal to direct a verdict for Sommer must be taken as made either with reference to the pleadings, in which case Sommer must be shown to be a party to the instrument, or else on the evidence, irrespective of the pleadings, in which case, unless he is to be taken to have signed the writing, the statute of frauds would be a defence under our decisions. *Hill* v. *Hooper*, 1 Gray, 131. *Freeman* v. *Foss*, 145 Mass. 361. It appears to us that this difficulty cannot be answered except by attributing an over subtle meaning to the firm signature and to the acts of the new partners. We cannot read " Gross and Strauss " as not only meaning all those who then were members of the firm, but also as purporting to name in advance all persons who might become members pending the contract. It follows that a verdict for Sommer should have been directed. But there seems to be no reason why the Superior Court, if it sees fit, should not allow the plaintiff to discontinue as against Sommer and to take a judgment against the other defendant, Gross. *Ridley* v. *Knox*, 138 Mass. 83, 86. *Fifty Associates* v. *Howland*, 5 Cush. 214.

The plaintiff's letter answering the reasons for dissatisfaction given in the notice that she would not be employed beyond the year, was admitted only for what light it might throw on the defendants' reply and subsequent conduct, not as evidence of admissions by the defendants, as in *Sturtevant* v. *Wallack*, 141 Mass. 119. The defendants' reply excluded any admission.

Limited as it was limited, the evidence was not improper, and can have done no harm, although not very instructive.

We assume that the plaintiff might have been discharged for any just cause during her employment.  But the refusal to embark upon a second year was placed by the contract upon a special ground, and was restricted more than the implied right to discharge for cause.  The refusal to go on a second year could be justified only by " written notice . . . of any cause of dissatisfaction on or before January 1, 1893."  " Any cause " plainly means " any existing cause," or " any cause relied on." The defendants, therefore, could not be allowed to prove other causes.  The exceptions do not show that they offered to prove other causes arising after January 1, 1893, as distinct from other causes coexisting with those alleged in their notice.  But we are not prepared to say that the contract would allow a refusal to begin the second year for causes arising between January 1 and April 21, 1893.                    *Exceptions sustained.*