LACKNER v. McKECHNEY et al.

MILLER et al. v. LACKNER et al.

(Circuit Court of Appeals, Seventh Circuit. March 13, 1918.)

No. 2127.

1. PARTNERSHIP ⬅➪341—DISSOLUTION—CLAIMS.

On proceedings to wind up partnership affairs, creditors will be permitted to intervene and file their claims against the partnership assets and against individual partners.

2. PARTNERSHIP ⬅➪344—DISSOLUTION—AUTHORITY OF COURT OF EQUITY.

Where creditors filed their claims in a proceeding to wind up a partnership, the court of equity, which necessarily determines the validity and extent of the claims for the purpose of devoting any partnership assets to the payment thereof before distribution, will not remit claimants to another tribunal for full relief, if the partnership assets are deficient, but will give personal judgment against the partners for the deficiency.

3. PARTNERSHIP ⬅➪341—PROCEEDINGS TO WIND UP.

Where a bill by the executor of a deceased partner, seeking to wind up partnership affairs, alleged the existence of partnership assets, consisting of claims against a municipality, and creditors intervened, proving their claims, a court of equity may grant them relief against the surviving partners and the executor of the deceased partner, though the claims against the municipality proved worthless.

4. COURTS ⬅➪313—FEDERAL COURTS—CITIZENSHIP.

Where a citizen of Ohio, the executor of a deceased partner, filed in the federal court a bill against the surviving partners, residents of Illinois, to wind up the partnership affairs, which alleged the existence of partnership assets, and creditors intervened, *held* that, though the alleged assets proved worthless, the court had jurisdiction to enter decrees in favor of the claimants against the surviving partners and the executor as such, regardless of the citizenship of the claimants.

5. EXECUTORS AND ADMINISTRATORS ⬅➪525—FOREIGN EXECUTORS—SUIT AGAINST—WAIVER OF PRIVILEGE.

Assuming that under the Illinois statutes a foreign executor is not subject to suit, that privilege may be waived, and a foreign executor of a deceased partner, by filing his bill for an accounting and inviting the adjudication of creditors' claims, waives his privilege, both as against the partners and creditors who may intervene.

6. EXECUTORS AND ADMINISTRATORS ⬅➪525—FOREIGN EXECUTORS—SUIT AGAINST—WAIVER OF PRIVILEGE.

Where a foreign executor, who sued to wind up partnership affairs, filed a general demurrer for want of equity against the claim of firm creditors, he waived any personal privilege exempting him as a foreign executor from suit.

7. PARTNERSHIP ⬅➪258(3)—DECEASED PARTNERS—LIABILITIES OF.

Under Rev. St. Ohio, § 6102, establishing the separate liabilities of the surviving partners and of the estate of a deceased partner for joint firm obligations, a claim against a deceased partner's estate may be filed or sued upon without first exhausting the firm assets or establishing the surviving partners' insolvency.

8. LIMITATION OF ACTIONS ⬅➪50(3)—ACCRUAL—COMPENSATION OF ATTORNEY.

Where attorneys were generally employed for certain litigation, their cause of action for compensation does not accrue until the end of the service or their withdrawal from the litigation, and hence limitations do not begin to run until that time.

⬅➪For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. PARTNERSHIP ⬥═►247—CONTRACTS—CONTINUANCE.

Where a partnership engaged attorneys to prosecute litigation for the firm, and such litigation was unfinished at the time of the death of one of the partners, such death did not, the contract being joint, terminate the employment.

10. EQUITY ⬥═►350—ORDER OF RE-REFERENCE—LACHES.

Where proceedings were not dismissed because of failure to take testimony within three months, as required by old equity rule 69, an order of re-reference thereafter waived any possible laches.

11. EQUITY ⬥═►359—RIGHT TO DISMISS—EFFECT.

Where attorneys, who had performed services under a contract with a partnership, filed their claim in a proceeding brought by the executor of a deceased partner to wind up the partnership affairs, *held*, that they acquired an independent standing in the suit, and the court should not allow the original bill, etc., to be dismissed until the intervening petition was disposed of on the merits.

Appeal from the District Court of the United States for the Northern District of Illinois.

Bill by Levi C. Weir, as executor of the estate of Frederic C. Weir, against John McKechney and others, which, after the death of complainant, was revived in the name of Joseph L. Lackner, his administrator. John S. Miller and another filed an intervening petition, and from a decree dismissing the original bill, cross-bill, and intervening petition, petitioners appeal. Reversed and remanded, with directions.

On July 28, 1900, Levi C. Weir, a citizen of Ohio, and the executor of the estate of Frederic C. Weir, appointed as such by the courts of Ohio, of which Frederic was a resident, filed a bill as such executor against John McKechney and John McKechney, Jr., alleged to be the surviving copartners of Frederic, and citizens of Illinois. The bill charges that while the partnership was to continue until certain work with the city of Chicago and the drainage canal was completed, and during such time the defendants should superintend the work without pay, they had nevertheless wrongfully paid out funds of the partnership to one of them for such services. Other wrongful transactions were charged. The bill further alleged that in 1897 an action was brought against the city of Chicago; that on March 1, 1899, Frederic died; that the action was revived in the name of the defendants, as surviving partners, on March 10, 1899; that in August, 1899, a large judgment was recovered against the city of Chicago; that an appeal was then pending from the judgment, which judgment constituted the only remaining asset of any value; and that all of the business had been completed, except to collect the judgment and pay the debts of the firm and to distribute the surplus between plaintiff and the defendants. The bill then recited the firm indebtedness to sundry persons, including Levi C. Weir in his individual capacity as an accommodation indorser and for money loaned since the death of Frederic. Insolvency of the defendants, and the threat and danger of a settlement of the judgment and the disposition thereof, to the injury of the bona fide creditors of the partnership and of Frederic's estate, were charged, and an accounting of the partnership transactions and adjustment of the rights of the parties prayed for; the plaintiff offering to pay the defendants whatever might be due.

The defendants, answering, denied insolvency, as well as the allegations of wrongdoing, and charged that Levi was interested with his brother Frederic in the latter's share in the firm, and as such was liable for the firm's debts and should be made a party to the suit. They further filed a cross-bill for an accounting as to several joint enterprises. Levi was never served individually, and never in any manner appeared in the proceeding other than in his ca-

---

⬥═►For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pacity as executor of Frederic's estate. Certain agreements, in the nature of an armistice, were subsequently made by the parties. In February, 1902, the wife of John McKechney, claiming an interest in the firm's assets under this agreement, filed a bill in the state court for the appointment of a receiver. Thereupon a supplemental bill was filed in the court below. The state court proceedings were restrained, and the order appointing a receiver for the firm in the court below was affirmed in this court. McKechney v. Weir, 118 Fed. 803, 55 C. C. A. 417.

In April, 1904, the defendants filed a petition, alleging that the receiver had no funds to conserve the estate; that they were unable to pay the attorney's fees of the present appellants, John S. Miller and Merritt Starr, who had represented the firm in the litigation with the city of Chicago; that these counsel had given notice of their intention to withdraw, whereupon they prayed authority to employ counsel to prosecute the claims. Levi C. Weir, as executor, in his answer to the petition, alleged that, since the death of Frederic and during the pendency of the action against the city of Chicago, he had advanced considerable sums for the benefit of the firm, and specifically had advanced the money necessary to pay Miller and Starr to file a petition for rehearing, after the Supreme Court had reversed the judgment against the city of Chicago; that by this action the opinion had been modified, so that a recovery against the city was deemed probable. He denied any liability to Messrs. Miller and Starr for their past services. McKechney's petition was subsequently withdrawn by leave of court.

In July, 1904, the firm of Peck, Miller & Starr withdrew their appearance as solicitors for the defendants in this cause, and thereupon the appellants, by leave of court, filed their intervening petition in the proceedings. This petition alleged that the firm of Weir, McKechney & Co., and its several members, about January 26, 1899, retained the petitioners in and about their business and in the prosecution of claims against the city of Chicago; that the original contract of employment was made by John McKechney, the managing partner, and was ratified by Frederic C. Weir; that, shortly after Frederic's death, the surviving partners renewed the request that the petitioners prosecute the claims, and that these requests and the promise to pay for the services were made at the instance or with the assent of Levi C. Weir, the executor: that, shortly after his appointment as executor, Levi, as executor, renewed the requests that the petitioners prosecute the suits; and that pursuant thereto they have rendered services to the firm since January 26, 1899. The petition further recites the recovery of the judgment against the city of Chicago in the sum of over half a million dollars in August, 1899, but its final reversal in the Supreme Court of Illinois; that the action was then still pending and undetermined. Petitioners charged that the balance due them, amounting to over $65,000, was a lien upon the assets of the firm, to be paid therefrom before any division among the partners. It charged the insolvency of the defendants McKechney; further that Levi C. Weir is the principal legatee of Frederic, and that the estate of Frederic is solvent; that Levi, as executor, has large sums in excess of all individual and firm debts of Frederic. Levi, as executor and individually, as well as the McKechneys, were made parties respondent. Petitioners prayed for an order calling upon creditors to prove their claims and for an allowance of petitioners' claim, to be paid to them, as well as for general relief.

Levi C. Weir, as executor, demurred to the petition for want of equity. Appended to the demurrer was an affidavit of the attorney, stating that Levi was without the jurisdiction, and that the attorney did not represent Levi personally and had no authority to appear for him individually. The order overruling the demurrer of Levi C. Weir, as executor, and directing him to answer the petition, contained the following addition: "The question as to the right of said petitioners to recover as against Levi C. Weir, executor of the last will and testament of Frederic C. Weir, deceased, to be paid from or out of the assets coming to his hands as executor or received by him as devisee under the will of Frederic C. Weir, deceased, is reserved, and not passed upon, by the action taken in overruling said demurrer." Thereupon Levi C. Weir, as executor, filed a document, entitled "a demurrer in part and an

answer to the residue of the petition." As to so much of the petition as charged the receipt by Levi, as executor, of large sums of money, and as prayed that Levi, as executor, might be decreed to pay the petitioners the amount which might be found due and owing them, Levi, as executor, demurred generally for want of equity, and as to the residue of the petition answered that he neither admitted nor denied the original retainer of petitioners, the ratification by Frederic, the renewal of the contract after Frederic's death, by the surviving partners, but denied that the surviving partners' promises were made with his assent, or that he requested the petitioners to attend to the business of the firm. The petitioners replied to so much of this document as purported to answer the petition, and as to the remainder moved that it be stricken out.

The cause had been referred to a master in chancery in 1900. In March, 1905, prior to the disposition of the demurrers to Miller and Starr's petition, this order of reference was ordered to stand. No proceedings were taken thereunder, and on December 16, 1912, the order of reference was set aside, and the "cause" referred to another master. In the meantime, by the order of September, 1910, Joseph L. Lackner, as administrator de bonis non with the will annexed of Frederic C. Weir, deceased, was substituted as complainant, and it was ordered that all intervening petitions filed should stand without prejudice by reason of the death of Levi C. Weir.

In February, 1913, testimony was begun to be taken before the master on the petition of Miller and Starr. In June, 1913, the hearing was stayed by order of court. In January, 1914, the proceedings before the master were again stayed, and discontinued until the determination in the state court of a bill of review of the former proceedings and the judgment in favor of the city of Chicago. On March 16, 1914, a decree was entered, denying the motion of Miller and Starr for the vacation of the stay orders and for permission to proceed with the taking of testimony, the decree reciting that the demurrer to the bill of review in the state court had been sustained, but that an appeal therefrom was pending. The decree further denied the motion of Miller and Starr for permission to the master to certify the evidence theretofore taken by him, and sustained the objection to any proof on the intervening petition, and thereupon, on motion of the complainant, dismissed the original bill, cross-bill, and all intervening petitions. From this decree, the present appeal was taken.

It is to be noted that the bill of review in the state court had been filed after the city of Chicago, under its plea of set-off, had been successful in the original litigation, and it may be added that, pending the present appeal, the bill of review has been finally dismissed.

John S. Miller and Merritt Starr, both of Chicago, Ill., for appellants.

Charles H. Aldrich, of Chicago, Ill., and Lawrence Maxwell, of Cincinnati, Ohio, for appellees.

Before MACK and ALSCHULER, Circuit Judges, and GEIGER, District Judge.

MACK, Circuit Judge (after stating the facts as above). [1, 2] 1. Concededly, on proceedings to wind up copartnership affairs, creditors will be permitted to intervene and file their claims against the copartnership assets and against the individual members of the firm. A court of equity, necessarily determining the validity and extent of their claims for the purpose of devoting any partnership assets to the payment thereof before any distribution as between the copartners, would not remit them to another tribunal for full relief, if the partnership assets proved deficient, but would give personal judgment against the copartners for the deficiency. Johnson v. Miller, 50 Ill. App. 60.

[3] But it is contended that this personal deficiency judgment will

be rendered only in a case in which there are actual firm assets that have been brought within the jurisdiction of the court. A bill might conceivably be brought after all firm assets had been dissipated, for an accounting as to the past transactions, and a settlement as between the copartners because of those transactions might be decreed, regardless of the existence of unpaid partnership debts, and therefore without a determination of the amount of such outstanding liabilities.

Such, however, is not the ordinary bill to wind up a partnership, and such was not the bill in this case. It was charged, and for many years believed by all the parties, that there were partnership assets of very great value, namely, the claim against the city of Chicago. In and by the bill itself creditors were expressly invited to come into the proceedings. One of the essential objects of the original litigation was to prevent the defendants from exercising their power over this claim or judgment to the detriment both of the complainant, as executor of the deceased's personal estate, and of the firm creditors.

When the copartners themselves have asserted, and it may be assumed have honestly believed in, the existence and value of firm assets, and thus have invited and led their creditors to come into the dissolution litigation for satisfaction of their claims, instead of resorting to a direct action at law or in equity against the estate of the deceased partner or the surviving members of the firm, and to remain therein until their rights in such an original action would be barred by the statute of limitations, neither principle nor any authority cited or found compels or justifies a court of general chancery jurisdiction in refusing to exercise that jurisdiction, and to render personal judgment in favor of the firm creditors, merely because the supposed firm assets have finally proven to be valueless.

[4] 2. Although the claim against the city of Chicago was a chose in action, the federal court, through its receiver, obtained control thereof. Firm creditors were thereby prevented from seeking to realize payment of their claims out of this fund, as they might otherwise have done through attachment or garnishment proceedings in the state courts. Whether this claim should eventually turn out to be valuable or valueless, either because of a set-off or otherwise, it was deemed by the parties and was in fact an asset of the estate—an asset which at the time the original proceedings were begun had a very substantial value, and which, even at the time appellants' intervening petition was filed, was deemed by the parties to be of some value. Moreover, the partnership as such was alleged to have a claim against the defendants for moneys wrongfully taken from the firm property—a claim which, if substantiated, would enable the partnership to share pro rata with individual creditors of the insolvent partner (Burdick, Partnership [3d Ed.] p. 313), and thus perhaps yield something for firm creditors. The relative rights of the copartners in and to the firm assets at the time that the original bill was filed could not be finally adjudicated until the rights of the creditors should have been determined; the determination, therefore, of the validity and amount of the creditors' claims against the firm was certainly proper and germane to the subject-matter of the principal proceedings.

· But, even if there had been confessedly no partnership assets, a determination of the affairs of the copartnership and the mutual rights of the copartners would have made adjudication of the firm liabilities none the less germane or desirable. While creditors could not have been compelled to submit themselves to the jurisdiction of the court, they were very properly admitted, irrespective of citizenship, for this purpose. Only with them before it could the court properly and fully wind up the partnership affairs. Not merely in their own interest, therefore, but in the interest of the principal parties to the litigation and for the purpose of determining the latters' relative rights, are creditors permitted to intervene in such proceedings. It may be that a personal decree in their favor as against their debtors is not absolutely essential to the settlement of the main proceedings; but with the parties properly before it, not merely as claimants of the fund, but as parties, the extent and validity of whose entire claim must be found, the jurisdiction of the federal chancery court, in our judgment, justifies and requires that, upon the adjudication of the amount of the claim, payment thereof should in a proper case be decreed, irrespective of the citizenship of the intervening creditors. The decree, however, would be against the executor or administrator as such.

[5, 6] 3. Assuming that under the Illinois statutes a foreign executor is not subject to suit, clearly this privilege may be waived. Weir, as executor, by filing his bill for an accounting, necessarily and expressly offered to pay what might be found due from him to the defendants; but, inasmuch as he invited the adjudication of creditors' claims, he must be held likewise to have waived any such privilege as against them. Decker v. Patton, 20 Ill. App. 210. Moreover, he filed a general demurrer for want of equity to appellants' claim. He thereby waived any personal privilege exempting him as a foreign executor from suit. Newark Savings Institution v. Jones' Executors, 35 N. J. Eq. 406; Palm's Adm'r v. Howard (Ky.) 102 S. W. 267. Cf. Lawrence v. Nelson, 143 U. S. 215, 12 Sup. Ct. 440, 36 L. Ed. 130.

[7, 8] 4. Weil v. Guerin, 42 Ohio St. 299 (and see, too, Gaines v. Therman, 8 Ohio N. P. [N. S.] 521, 20 Ohio Dec. 95), construing section 6102 of the Ohio statutes, establishes the separate liabilities of the surviving partner and of the estate of the deceased partner for joint firm obligations. The clear intimation therefrom is in accordance with the overwhelming weight of American authority that in Ohio such a claim against the deceased partner's estate may be filed in the probate court or sued upon without first exhausting firm assets or establishing the surviving partner's insolvency. The claim might therefore have been filed against the estate as soon as it accrued. But in our judgment it did not accrue until the withdrawal of appellants from the litigation after the final decision in the Supreme Court of Illinois, and this was within the Ohio statutory period of one year prior to the filing of the intervening petition.

[9] Appellants' claim is based upon a general employment for certain litigation, not for a fixed time on a fixed salary. The cause of action, therefore, does not accrue from day to day, but only at the

termination of the service. Walker v. Goodrich, 16 Ill. 341; 2 Mechem, Agency, § 2262. The death of Frederic did not necessarily terminate the contract. If only for the purpose of winding up the affairs, the firm continued thereafter, and the surviving partners remained, as they had theretofore been, the managing members of the firm. As such, it was their duty on behalf of the firm to continue the litigation, and in so doing they were fully authorized to permit the continuance of the contract of employment with the appellants, entered into in the lifetime and with the assent of Frederic. The obligation resulting therefrom is but a continuation of the original obligation incurred by all of the copartners. That appellants' performance was uncompleted at Frederic's death, and was only completed thereafter, does not absolve the estate of the deceased partner from direct liability therefor, in view of the nature of the services as incidental to the winding up of the partnership affairs. See Mason v. Tiffany, 45 Ill. 392; Hughes v. Gross, 166 Mass. 61, 43 N. E. 1031, 32 L. R. A. 620, 55 Am. St. Rep. 375; 2 Mechem, Agency, § 1567; In re Kalbfell, 27 Pittsb. Leg. J. (N. S.) 210; Id., 30 Pittsb. Leg. J. (N. S.) 274. The situation is totally unlike that which arises when a surviving partner incurs new obligations, not incidental to the winding up, or gives negotiable paper for old obligations.

[10] 5. It is clear from the record that the present proceedings were not dismissed because of a failure under the old equity rule 69 to take testimony within three months. The order of re-reference in December, 1912, waived any possible laches of any of the parties in this respect.

[11] 6. Appellants, as interveners, had obtained an independent standing in the cause. They were entitled to proceed to establish their claim. The original plaintiff and defendants might waive their mutual accounting, but they could not thereby destroy appellants' rights as a party litigant. The court should not permit the original bill to be dismissed until such an intervening petition is disposed of on the merits. C. & A. R. R. Co. v. Union Rolling Mill Co., 109 U. S. 702, 3 Sup. Ct. 594, 27 L. Ed. 1081.

The decree must therefore be reversed, and the cause remanded, with directions to permit appellants to proceed with the taking of evidence, and for further proceedings consonant with the views herein expressed.