23 P.(2d) 366

**KIKER v. BANK SAV. LIFE INS. CO.**

**No. 3834.**

Supreme Court of New Mexico.

May 24, 1933.

Rehearing Denied July 10, 1933.

Beutler & Fahy, of Taos, and Sloan, Hamilton & Cole, of Topeka, Kan., for appellant.

Robert A. Morrow, of Raton, and A. M. Fernandez, of Taos, for appellee.

WATSON, Chief Justice.

The Bank Savings Life Insurance Company appeals from a judgment upon a verdict recovered by R. J. Kiker for damages for having been wrongfully discharged from its service.

The contract of employment was in writing. It constituted appellee state agent of appellant for New Mexico. It prescribed the compensation, which was to consist of commissions on original and renewal premiums. Paragraphs 6 and 12 are as follows:

"6. That in consideration of the commissions, both first-year and renewal for which provision is herein made, the Agent agrees to devote his whole time, attention and ability to the soliciting of life insurance for the Company. Failure to comply with this agreement will be cause, at the option of the Company, for the termination of this contract.

"That the Agent will not, while this contract remains in force, represent any other Life Insurance Company.

"12. That this contract shall continue as to the writing of new business from the date of its beginning until termination as herein provided, or by the death of the Agent, or the resignation of the Agent by thirty (30) days' written notice, or until superseded by another contract. It is expressly agreed that if the Agent shall give cause by any of the following acts:

"1. Fraud.

"2. Failure to pay over moneys belonging to the Company as herein provided;

"3. Conduct prejudicial to the interest of the Company; or

"4. Violation of provisions of Sec. 9 hereof;

the company shall have the right to terminate this contract at any time by serving written notice of such termination.

"In the event of termination for the first or the second cause above, all interest in and to any renewal commissions due or to become due under this contract, shall be forfeited."

The contract was terminated by the act of appellant in discharging appellee, effected by a letter in the following language: "Since you are negotiating with other companies, with a view to severing your connection with us, and also since it has been evident for some time that you are not devoting your full time toward the development of business for this company in the State of New Mexico, in accordance with your contract, we find it necessary to advise you that thirty days from this date, your contract will be terminated in accordance with its provisions."

Appellee, after some allegations calculated to show the real trouble between the parties, and that he was in the right, pleaded that he had faithfully performed his part of the contract, and had, nevertheless, been unlawfully discharged.

Appellant, by answer, in justification of the discharge, pleaded that appellee had failed to devote his whole time, attention, and ability to the business, and that he had failed to turn over moneys which he had collected and which belonged to appellant. Other conduct claimed to have been prejudicial to appellant's interests was set up, but requires no mention. By cross-complaint appellant pleaded that appellee had collected and failed to turn over, and then owed appellant, $803.04, for which it prayed judgment.

Appellee, by reply, pleaded that appellant was estopped from relying upon any indebtedness on account of moneys collected and not turned over; First, because such was not the reason for appellant's dismissal; and, second, because, by course of dealing from the beginning, and at all times, appellant had acquiesced in such indebtedness. By way of answer to the cross-complaint, he admitted the indebtedness, and claimed that from the time of his discharge he had held the same as an offset against his damages.

We shall first consider the attempted justification of the discharge on the ground of appellee's failure to devote all of his time, attention, and ability to appellant's business.

The facts in this regard, as described in appellant's brief, are that appellee took a group of Taos Indians on certain vaudeville tours for exhibition purposes, and charged admission; a ten days' tour in September, 1928, a three weeks' tour in November and December, 1928, and a one week tour in February, 1929. As the main facts were admitted, appellant moved for a directed verdict at the close of the case, and later moved for a peremptory instruction. It now contends that the court erred in overruling these motions.

 There has been much argument as to whether these tours were independent "business enterprises" of appellee, or whether they were intended and calculated to promote the interests of the agency by way of advertising and making new contacts. Even if they had no other purpose or effect than to divert or profit appellee, we should be unwilling to say, as matter of law, that they constituted cause for his discharge. An agreement "to devote * * * whole time, attention and ability" to an employment cannot be taken literally, and is to be reasonably interpreted. Appellant was entitled to have the question submitted to the jury under proper instructions, but not, in our opinion, to a directed verdict or a peremptory instruction.

Appellant also moved for a peremptory instruction upon the admitted fact of appellee's failure to turn over all moneys in his hands belonging to appellant. As appears from the letter above set forth, this was not one of the reasons assigned by appellant for the dismissal. Appellee contends that the fact is therefore entirely immaterial.

 Generally, in an action for wrongful discharge, the employer may plead in defense any sufficient cause, though it may have been unknown to him at the time, though his real reason or motive may have been something else, and though another cause may have been expressly assigned. Williston on Contracts, §§ 744, 839; Labatt on Master and Servant, § 189; Page on Contracts (2d Ed.) § 3058; 18 R. C. L. 516; 39 C. J. 89.

But the parties of course have the right to stipulate the manner in which the employer may terminate the contract. If they stipulate that it shall be by written notice specifying the cause, a discharge specifying no cause, or an insufficient cause, would be wrongful. It follows that, under such a contract, a cause not specified would not be available in defense. Hughes v. Gross et al., 166 Mass. 61, 43 N. E. 1031, 32 L. R. A. 620, 55 Am. St. Rep. 375, cited; 18 R. C. L. 516; Mortimer v. Bristol, 190 App. Div. 452, 180 N. Y. S. 55.

Appellant here admits that the contract, by paragraph 12, supra, required written notice, but denies that appellee was entitled to a specification therein of the cause for discharge. In Mortimer v. Bristol, supra, a requirement of written notice of discharge seems to have been deemed to include or imply a requirement that the cause be specified therein. This, no doubt, on the theory that the provision was for the agent's benefit, and that, unless so interpreted, it would be of slight, if any, advantage. However that may be, we think that this particular contract must be so interpreted. Paragraph 12 itself refutes appellant's contention. It does not in

express terms require the employer to state the cause in the written notice. But it does disclose a necessity for a common understanding of the cause. It enumerates four causes sufficient for discharge on written notice. It will be observed that two of the causes involve forfeiture of commissions on renewal premiums, while two do not. A notice of discharge not specifying the cause would have left appellee's status unsettled in this respect. In this particular case, the causes specified in the notice do not seem to result in forfeiture of rights in renewals, while the cause here in question would. We cannot doubt that paragraph 12 entitled appellee to written notice, not only of the naked fact of his dismissal, but to a statement of the cause on which he could rely in determining his future rights and conduct.

So we hold that appellant was not entitled to peremptory instruction on the admitted fact that appellee had failed to turn over moneys collected for and belonging to appellant.

■ For the same reasons it follows that there was no error in the exclusion of a letter from appellee to appellant, written before his discharge, admitting that his contract could be canceled because his "nets" were "not up to date," unless there is merit in the contention that the letter, independently of its bearing on the issues, was admissible for the purpose of impeaching appellee; he having alleged in his sworn complaint that he had complied with the contract in all respects.

But impeachment is not proper on immaterial matters. State v. Kile, 29 N. M. 55, 218

P. 347. We have already concluded that it was immaterial that appellee had failed to remit all moneys collected. It was equally immaterial that appellee had once regarded that as a cause for termination of the contract.

■ Error is assigned upon the instruction as to the measure of damages; but we cannot consider the several objections here argued. Appellant failed to call them to the attention of the trial court, either by requested instruction proposing the proper measure of damages, or by specific exception to the instruction given. Such requirement is too familiar to need citation of precedents, and is too important in our policy of review to be deviated from.

That "the trial court committed error in the allowance of introduction of testimony on the part of the plaintiff's witness R. A. Hann" is not to be commended as a point relied on for reversal. However, we exercise our discretion to waive its generality. Witt v. Evans, 36 N. M. 365, 16 P.(2d) 60.

■ Mr. Hann gave expert testimony as an actuary. By him appellee was endeavoring to show the present value of the renewal commissions on business done by appellee and his corps of agents, as of the date of the termination of his agency, as a basis for computing damages. Appellant complains that the witness was allowed to disregard evidence "which showed a large percentage of the policies having lapsed between the date of the termination of the contract and the time of trial."

We do not know that we fully understand the point. Hann's testimony as to present values was based on an actuary's formula of the lapsing of policies according to average experience. Present value, as thus disclosed, would not be incompetent merely because the record showed that a number of policies in force when the agency terminated had lapsed before the trial. It was open to appellant to show actual or probable variance from the average in the particular case. The jury was not bound by the formula or the figures resulting therefrom. It was merely a basis of computation, a point of departure. Appellant cross-examined the witness as to the percentage of second year lapses, third year lapses, etc., according to average experience. If the lapses which had actually occurred at the time of the trial constituted an unusually high percentage of policies in force, appellant was in a position to urge the fact upon the jury, as showing that the actual present value was less than the theoretical.

By the same witness appellee obtained an estimate of the value of first commissions and the present value of renewal commissions on appellant's New Mexico business from the termination of the contract to the date of the trial.

Appellant here relies on this as error. Again we fail to follow the argument. It is said to have been error because appellee's agency was not exclusive, a matter of considerable doubt, and which appellant does not develop. It is then said: "It might have been proper to introduce in evidence the volume of business written in the State of New Mexico subsequent to the termination of the contract as some evidence of the value of appellee's contract if it was wrongfully terminated, but under no theory would it be proper to admit evidence of the value of renewal commissions and first year commissions on this business, as these items could not be proper measure of damage."

If proper to show the volume of business, it could not have been improper to show the amount of first commissions and the present value of the renewal commissions. The important matter was the loss of profits. The volume of business itself was of no moment. It was proper only as a basis on which to compute lost commissions.

We are not to be understood as establishing a rule of damages in cases of this kind. We stop with consideration of the particular contentions here made. We find them without merit.

Appellant states the point "that the verdict of the jury was contrary to the evidence." Under it he claims that excessive damages were awarded, but the matter is not sufficiently developed to merit consideration.

Finally, the point is stated "that the court erred in overruling the defendant's motion for a new trial." In the brief this is reduced to the proposition found in the thirteenth ground of the motion, that the jury's negative answers to special interrogatories 1, 4, and 7 are directly contrary to the admitted facts.

Interrogatory 1 was in this language: "Did the plaintiff, R. J. Kiker, make a vaudeville

tour with a group of Taos Indians during the month of September, 1928, to Albuquerque and Tucumcari, New Mexico, and Dalhart and Amarillo, Texas for exhibition purposes?"

Interrogatories 4 and 7 are the same except that they refer to the two other tours.

What we have already said disposes of the contention that an affirmative answer to these questions would have been fatal to the general verdict. The questions did not go to the ultimate fact, whether, within the meaning of the contract, appellee had devoted his whole time, attention, and ability to the business.

"Special findings irreconcilably in conflict with a general verdict will defeat the latter. But, unless the special finding is upon a material or essential point, it will not affect the general verdict." Rheinboldt v. Fuston, 34 N. M. 146, 278 P. 361.

It is strongly urged here that these answers, obviously untrue, convict the jury of bad faith, for which a new trial should have been awarded. It is greatly to be doubted that the motion for new trial presented that question. But, if it did, we are not persuaded that the record shows the jury to have been prejudiced. The making of the trips was admitted by appellee. But he contended that they were made for the real purpose of increasing his business. The question for the jury was whether these trips were in violation of his obligation to devote his whole time to the business. The jury might well have considered that appellee was pursuing anoth-

er than mere "exhibition purposes," and that the negative answer was proper. Not only were the interrogatories inconclusive, but they were slightly ambiguous, in view of the controversy as to the real objects of the tours.

Finding no reversible error in the record, we feel constrained to affirm the judgment and to remand the cause. It is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.