766 P.2d 280

Louis KESTENBAUM,
Plaintiff–Appellee and
Cross–Appellant.

v.

PENNZOIL COMPANY and Vermejo
Park Corporation, Defendants–Appel-
lants and Cross–Appellees.

No. 16965.

Supreme Court of New Mexico.

Nov. 30, 1988.

Rehearing Denied Jan. 13, 1989.

Hinkle, Cox, Eaton, Coffield & Hensley, Harold L. Hensley, Jr., Stuart D. Shanor, James M. Hudson, Roswell, Ron D. Daugherty, Houston, Tex., for defendants-appellants and cross-appellees.

Chris Key, Kacey DeNoi, Albuquerque, for plaintiff-appellee and cross-appellant.

Mountain States Legal Foundation, Constance E. Brooks, Paul Farley, Denver, Colo., Losee & Carson, Jerry Losee, Artesia, amicus curiae.

## OPINION

RANSOM, Justice.

Plaintiff Louis Kestenbaum was awarded damages for breach of an employment contract. The trial was had before a jury which found by special verdict that the employment was not terminable at will, but rather was subject to an implied contract requiring a good reason for termination, and that there was no good reason to discharge Kestenbaum. We affirm.

Kestenbaum was employed in March of 1977 by defendants Pennzoil Company and its subsidiary, Vermejo Park Corporation, as the vice president in charge of guest operations at a secluded ranch in northern New Mexico. The ranch maintains guest facilities and services for lodging, hunting, fishing, and other recreational activities.

By anonymous letter in January of 1984, Kestenbaum was accused of sexual harassment, illegal conduct, and mismanagement of the ranch. Pennzoil initiated an investi-

gation in which information was gathered through interviews of Vermejo Park female employees, past and present. Subsequently, the investigators presented to Pennzoil officials an oral briefing and a written report that summarized the evidence. On February 13, 1984, Pennzoil summoned Kestenbaum to its headquarters in Houston where he met with the investigators who confronted him with the allegations concerning sexual harassment, which he denied. Thereafter, Pennzoil officials informed Kestenbaum of the names of the persons interviewed and he was given the opportunity to comment about each. Pennzoil also permitted Kestenbaum to name witnesses who would speak on his behalf. Kestenbaum met one more time with Pennzoil vice-president Rundle and again denied the allegations, but to no avail. On February 17, Kestenbaum's employment was terminated.

Kestenbaum claimed that, without fair investigation and consideration of the allegations and his response, he was terminated on the grounds of sexual harassment for which he was innocent. Pennzoil denied Kestenbaum's claim and affirmatively asserted that Kestenbaum was an employee at will and was dischargeable for any or no reason. Alternatively, if a good reason was required to discharge Kestenbaum, Pennzoil asserted that it had reasonable grounds to believe that sufficient cause existed to justify its actions.

By Instruction No. 8, the jury was instructed on Kestenbaum's claim that, by words and conduct, the parties entered into an employment contract which included among its terms that (1) in addition to a salary for Kestenbaum's labor and best job efforts, he would receive various fringe benefits, including but not limited to a retirement program, a stock purchase program, and health and other insurance; (2) the employment would be of a long-term nature, but subject to the normal contingencies of work life, such as a sale of the ranch, early voluntary retirement, layoffs and so on; and (3) with regard to involuntary termination of employment, Kestenbaum would be terminated only for just cause or, in other words, for a good reason,

he would be treated fairly, have the opportunity to know some specifics of the charges against him, be given a chance to defend himself, and his supervisors would not determine whether there was just cause for the termination until hearing and fairly considering Kestenbaum's side of the story. Whether these claimed terms and conditions applied to the employment contract was left for the jury to determine on disputed evidence.

Without objection, the court instructed the jury on the applicable law of employment contracts, as follows:

#### INSTRUCTION No. 9

An implied contract is an agreement in which the parties, by a course of conduct, have shown an intention to be bound by such agreement.

#### INSTRUCTION No. 10

Under New Mexico law, the general rule is that a contract for permanent employment, calling only for the performance of duties and payment of wages, is a contract for an indefinite period. It is terminable at the will of either party. A discharge without reason is not a breach of such an at will employment.

#### INSTRUCTION No. 11

In every contract the law implies a covenant of good faith and fair dealing between the parties ...

The implied covenant of good faith and fair dealing, however, is not to be used by you in determining whether or not there was a term of an implied contract calling for discharge for just cause only. You must first find from the words and conduct of the parties that they intended that the plaintiff's discharge would be made for just cause only.

If you find that there was an implied contract of employment between the parties which included a good-reason standard for termination, then the implied covenant of good faith and fair dealing

requires in the traditional sense a moral quality equated with honesty of purpose, freedom from fraudulent intent and faithfulness to duty or obligation.

The jury also was instructed that, for purposes of guidance, it could properly resort to Equal Employment Opportunity Commission guidelines that define what constitutes sexual harassment under the "totality of the circumstances" rule. The guidelines describe the strict responsibility of an employer for the acts of its supervisory employees with respect to sexual harassment and state that an employer should develop appropriate sanctions and take all steps necessary to prevent sexual harassment. The court further instructed the jury that sexual harassment by a supervisor is a violation of law and that, where an employer receives allegations of conduct that could amount to sexual harassment, the employer has a legal duty and obligation to investigate and promptly take appropriate remedial action. Finally, the court instructed that evidence in a case involving sexual harassment is typically contradictory. Nonetheless, the employer still has the duty to take action to prevent sexual harassment.

We address the following issues raised by Pennzoil in this appeal: (1) Whether the claim for breach of an implied employment contract was barred by the statute of frauds? (2) Whether there was substantial evidence to support the jury's finding of an implied employment contract requiring a good reason for termination? (3) Whether the law applied by the court unduly restricted Pennzoil's showing that there was a good reason for the discharge? (4) In terminating employment for good reason, what is the standard for judging the conduct of the employer? (5) Whether the court committed reversible error in refusing to instruct specifically on asserted defense theories as requested by Pennzoil? (6) Whether Pennzoil was entitled to a new trial by reason of inflammatory closing arguments, by reason of the receipt of evidence germane to claims dismissed on directed verdicts, but irrelevant and immaterial to the claims finally submitted, or by reason of a verdict contrary to the weight of the evidence?

■ *Statute of Frauds.* Pennzoil contends that the trial court erred in denying its motion for directed verdict on the breach of contract claim. Pennzoil asserts that, because the action was based on an oral employment contract that could not be performed within one year, the action was barred by the statute of frauds. *See Skarda v. Skarda,* 87 N.M. 497, 501, 536 P.2d 257, 261 (1975). At the least, Pennzoil argues, the court erred in keeping the issue from the jury. Pennzoil maintains that an agreement for employment until Kestenbaum's retirement would have been for a specific term more than one year, rather than for life or for an indefinite period. Pennzoil concedes that the statute of frauds does not apply to a contract under the latter circumstances. *See Hodge v. Evans Fin. Corp.,* 823 F.2d 559, 561–65 (D.C. Cir.1987). Nor does it apply to a contract for employment until retirement.

There is no indication in local law or elsewhere that a permanent employment contract should be construed as a contract for an expressly stated, fixed term of years by virtue of an employee's expectation that he or she will retire at some point. No court or commentator has ever suggested that the possibility of the employee's death within one year would "defeat" rather than "complete" such a contract. To the contrary, courts and commentators have consistently accepted the view that indefinite permanent employment contracts such as Hodge's fall outside the statute because they are capable of full performance within one year. *See, e.g.,* 2 *Corbin on Contracts* § 446, at 549–50 (Permanent employment contracts fall outside the statute because "[t]he word 'permanent' has, in this connection, no more extended meaning than 'for life.'"); 3 *Williston on Contracts* § 495, at 582 ("A promise of permanent personal performance is on a fair interpretation a promise of performance for life, and therefore not within the Statute.").

823 F.2d at 564 (footnote omitted). As with Hodge, Kestenbaum unequivocally alleged a contract for permanent employment, not a contract until he reached a specified age of retirement.

■ Further, Pennzoil bore the burden of pleading and proving the affirmative defense of the statute of frauds. *See* SCRA 1986, 1–008(C). As a general rule, determination of the applicability of the defense of the statute of frauds is a question of law for the court, not the jury. *Sanchez v. Martinez*, 99 N.M. 66, 653 P.2d 897 (Ct.App.1982). However, a factual question concerning the particulars of a contract may prevent a ruling on the statute's applicability as a matter of law. *Sierra Blanca Sales Co. v. Newco Indus., Inc.*, 84 N.M. 524, 505 P.2d 867 (Ct.App.), *cert. denied*, 84 N.M. 512, 505 P.2d 855 (1972). That is not the case here. Pennzoil presented no affirmative evidence on the issue, and Kestenbaum's evidence established that his employment contract was indefinite in duration.

*Substantial Evidence to Support Jury Finding of Implied Employment Contract Allowing Discharge Only for Good Reason.* Seeking support in *Gonzales v. United Southwest Nat'l Bank*, 93 N.M. 522, 602 P.2d 619 (1979), and *Garza v. United Child Care, Inc.*, 88 N.M. 30, 536 P.2d 1086 (Ct.App.1975), Pennzoil argues that, because Kestenbaum's oral employment agreement was for an indefinite period, he was an employee at will, dischargeable for any or no reason. Although Pennzoil recognizes an exception to at-will employment exists for an implied contract term based on the words and conduct of the parties, it maintains that, in New Mexico, this exception has been based only upon provisions included in an employee handbook or personnel manual. *See Forrester v. Parker*, 93 N.M. 781, 606 P.2d 191 (1980); *Francis v. Memorial Gen. Hosp.*, 104 N.M. 698, 726 P.2d 852 (1986). Even where a policy manual exists it will not always change the at-will employment relationship if the manual is not sufficiently specific. *Sanchez v. The New Mexican*, 106 N.M. 76, 738 P.2d 1321 (1987); *cf. Lukoski v. Sandia Indian Management Co.*, 106 N.M.

664, 748 P.2d 507 (1988) (where handbook represented an established policy regarding terminations and failed to alert employees against placing reliance upon it, policy properly could be found part of employment agreement).

■ Several jurisdictions quite properly have been willing to impose implied contractual duties based upon particular representations or conduct of an employer, without limitation to handbooks or manuals. These courts recognize that oral statements made by an employer may be sufficient to create an implied contract which provides that an employee shall not be discharged except for cause. We agree. *See, e.g., Toussaint v. Blue Cross & Blue Shield*, 408 Mich. 579, 292 N.W.2d 880 (1980); *Pugh v. See's Candies, Inc.*, 116 Cal.App.3d 311, 327, 171 Cal.Rptr. 917, 925–26 (1981) ("In determining whether there exists an implied-in-fact promise ... courts have considered ... personnel policies or practices of the employer ... [and] actions or communications by the employer reflecting assurances of continued employment...." (footnotes omitted)). Other courts that have restricted the right to freely discharge at-will employees because of an employment policy or procedure recognize the traditional at-will rule to be a rebuttable presumption. *See, e.g., Weiner v. McGraw–Hill, Inc.*, 57 N.Y.2d 458, 466, 443 N.E.2d 441, 446, 457 N.Y.S.2d 193, 198 (1982) (at-will rule affords no greater status than that of a rebuttable presumption and trier of fact should consider course of conduct of the parties, including the writings and antecedent negotiations); *Leikvold v. Valley View Community Hosp.*, 141 Ariz. 544, 688 P.2d 170 (1984) (en banc).

In the consolidated cases of *Toussaint* and *Ebling*, two employees, one employed for five years and the other for two years, brought wrongful discharge actions against their respective former employers. Toussaint received an oral assurance that "he would be with the company 'as long as I did my job,'" and Ebling "was told that if he was 'doing the job' he would not be discharged." Each employee asserted that the statements made by the employer con-

stituted an agreement not to discharge except for good cause. 408 Mich. at 597, 292 N.W.2d at 884. The employers argued, as does Pennzoil, that employment contracts for an indefinite term are terminable at the will of either party unless the employee has furnished consideration independent of his services to his employer.

Toussaint's case was strengthened because upon being hired he was handed a personnel manual that reinforced the oral assurance of job security. The court, however, did not rest its decision on the presence of the personnel manual. It ruled that (1) a provision of an employment contract providing that an employee shall not be discharged except for cause is legally enforceable although the contract is not for a definite term, and (2) such a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements. The court further held that "[e]mployers are most assuredly free to enter into employment contracts terminable at will without assigning cause. We hold only that an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract." 408 Mich. at 610, 292 N.W.2d at 890. The court concluded that when a prospective employee inquires about job security and the employer agrees that the employee shall be employed so long as he does the job, a fair construction is that the employer has agreed to give up his right to discharge at will and may discharge only for "good or just cause." *Id.*

▮ Pennzoil claims that the evidence presented by Kestenbaum was insufficient as a matter of law to establish an implied contract that required a good reason to terminate the employment relationship. We believe, however, that the evidence was sufficient to overcome the presumption that the employment contract was terminable at will. There was substantial evidence from which a jury reasonably could find that the parties agreed to a contract that

permitted termination only for a good reason.

Kestenbaum presented the following evidence to establish that his employment contract was for an indefinite period of time, and allowed involuntary removal only for a good reason. During initial employment negotiations, Kestenbaum's immediate supervisor at Vermejo Park made clear that the employment would be long term and permanent as long as Kestenbaum did his job. This was uncontroverted. Further, Kestenbaum testified that those assurances were consistent with his needs for long-term job security and the fact that he would not have considered the job if offered only on a short-term basis.

Mr. Wolfe, former operations manager at Vermejo Park, testified that Pennzoil only released permanent employees for "a good reason, a just cause." Mr. Lew, an investigator, stated that he presumed that Pennzoil only terminated employees for just cause. Vice-president Rundle confirmed this policy, as did Mr. Charlesworth, Kestenbaum's successor supervisor, who testified that Pennzoil believed it had to "have a good reason to terminate an employee" and that the Houston office always required good cause. Pennzoil presented no evidence that it maintained a "fire-at-will" management practice.

The insurance benefits manual and the policy manual also provided additional evidence regarding Pennzoil's policy and practice to forego its common-law right to fire at will. The insurance benefits manual contained a provision describing conversion privileges after termination of employment. The manual made no mention of a termination without cause. Neither did the severance pay plan in the policy manual address the effect of a without-cause termination of employment.

Pennzoil attempts to refute the sufficiency of the evidence by attacking each element individually. First, Pennzoil maintains that an implied employment contract altering the at-will presumption cannot be premised upon Kestenbaum's subjective understanding about statements made at the inception of the employment relation-

**26**

ship. *See Thompson v. St. Regis Paper Co.,* 102 Wash.2d 219, 685 P.2d 1081 (1984) (en banc). Pennzoil further asserts that the insurance benefits policy and severance pay plan are insufficient to create an implied contract because neither specifically altered the at-will relationship. Finally, Pennzoil contends that management practice has never been recognized in New Mexico as a sufficient basis from which to imply an employment contract allowing discharge for cause only.

■ We are unwilling to test the sufficiency of each piece of evidence standing on its own in a vacuum and rule, as a matter of law, that each alone fails to support a finding of an implied employment contract. In overcoming the presumption, it is not any single act, phrase or expression, but the totality of all of these, given the circumstances and the parties' situation and objectives, which will control. *Weiner,* 57 N.Y.2d at 466–67, 443 N.E.2d at 446, 457 N.Y.S.2d at 198; *Pugh,* 116 Cal.App.3d at 329, 171 Cal.Rptr. at 927 ("While oblique language will not, standing alone, be sufficient to establish agreement ... it is appropriate to consider the totality of the parties' relationship...." (citation omitted)). Undoubtedly, under *Sanchez v. The New Mexican,* the policy statements addressing insurance benefits and severance pay would, without more, be inadequate to alter the at-will relationship. However, when coupled with uncontroverted testimony describing the negotiations between Kestenbaum and Pennzoil's agent and with Pennzoil's concession that there was a management practice followed by Pennzoil not to terminate employment except for a good reason, there is substantial evidence to support the jury finding that an implied employment provision for discharge only for a good reason was in effect between Pennzoil and Kestenbaum.

■ *Law Applied as to Good Reason for Discharge.* Pennzoil argues that good reason for discharge existed as a matter of law and contends that the jury was misinstructed on applicable rules of implied contract. In reviewing alleged errors relating to jury instructions, this Court will consider

whether all of the instructions, when read and considered together, fairly present the issues and the law applicable thereto. *Webb v. Webb,* 87 N.M. 353, 533 P.2d 586 (1975). We recognize that the Uniform Jury Instructions contemplate that instructions should be concise and should not comment on the evidence. *See* SCRA 1986, Judicial Pamp. 13—The Concept of Jury Instructions; *Kinney v. Luther,* 97 N.M. 475, 641 P.2d 506 (1982).

The first instruction we address that was objected to by Pennzoil is Instruction No. 12, which read as follows:

INSTRUCTION No. 12

Where the terms of an implied contract of employment between the parties include provision for the employer to give the employee a chance to defend himself and to have some specifics of the charge, then you are instructed that the reasons given by the employer at the time of termination are the only reasons that the defendants may rely upon to show there was a good reason for the plaintiff's discharge.

■ Pennzoil objected to and appeals from the court's refusal to instruct to the contrary that, in an action for wrongful discharge, the employer may claim in defense any sufficient cause for terminating the employment. Pennzoil's requested instruction was based upon the law in *Kiker v. Bank Sav. Life Ins. Co.,* 37 N.M. 346, 23 P.2d 366 (1933), and provided that, "in an action for wrongful discharge, the employer may claim in defense any sufficient cause for terminating the employment, (i) even if it may have been unknown to him at the time of termination, (ii) even if his real reason or motive may have been something else, or (iii) even if another reason was expreslly [sic] given." However, the language quoted from *Kiker* does not purport to apply to the circumstances of this case. Here, if the jury were to find that the employment contract required Pennzoil to give Kestenbaum notice of specifics of the charge, and a chance for him to defend, indeed, the reasons given by Pennzoil to Kestenbaum are the only reasons that it

could rely upon. Where parties stipulate that the employer will terminate by notice specifying cause, "a discharge specifying no cause, or an insufficient cause, would be wrongful. It follows that, under such a contract, a cause not specified would not be available in defense." *Id.* at 349, 23 P.2d at 368. In the present case, no issue was raised contesting the right to notice and a hearing if the employment were not found to be at will. The trial court was correct to refuse Pennzoil's requested instruction.

■ Pennzoil's next contention is that the court erred in refusing its requested instruction that any finding of illegal conduct on the part of an employee is good cause for discharge. Pennzoil maintains that its requested instruction was necessary to inform the jury of the possible consequences of Kestenbaum's alleged illegal conduct in connection with the service and consumption of alcoholic beverages by minors. The record indicates that the requested instruction was a proper subject for argument but a misstatement of the law as applied to these facts. Pennzoil presented evidence at trial that Kestenbaum permitted minors to serve and to consume alcohol. Evidence also was presented that this practice existed prior to Kestenbaum's management of Vermejo Park and continued after his termination. Moreover, Kestenbaum's superiors were aware that under-age waitresses served alcohol to the guests, and expressed no concern. Given this evidence, the jury could have found that Kestenbaum's conduct was in the furtherance of the interests of the corporation and authorized by corporate superiors. The trial court properly concluded that the jury could in one context find that illegal conduct in performance of the job is good reason for firing, and in another context find it is not. It would have been error for the court to compel the jury to find that, under these circumstances, this conduct represented a good reason for discharge.

*Standard for Judging Conduct of Employer in Terminating Employment for a Good Reason.* Pennzoil objected to and appeals from the court's refusal to instruct that, where an employee is terminated for a good reason, the employer does not have to prove that the reason in fact existed. Pennzoil argues that the employer need only in good faith believe that the employee engaged in conduct that was inappropriate in the work place. *See Simpson v. Western Graphics Corp.,* 293 Or. 96, 643 P.2d 1276 (1982) (en banc) (absent evidence of express or implied agreement whereby employer contracted away its fact-finding prerogative, in discharge for good cause, there need only be substantial evidence to support employer's decision and that employer believed evidence and acted in good faith). Pennzoil contends that its requested Instruction No. 15 was essential to inform the jury of the employer's position at the time of Kestenbaum's discharge. Unless a jury is instructed that an employer only is required to demonstrate a good faith belief that cause existed to terminate, Pennzoil seems to suggest that the only alternative is to instruct the jury that the employer must prove good cause in fact.

Pennzoil maintains that to require an employer to have a preponderance of evidence establishing good cause in fact prior to making a decision to terminate an employee would place an unrealistic burden on the employer. Pennzoil points out that an employer does not have the benefit of extended discovery but must base his decision on information available at the time of discharge.

■ We agree, but we do not perceive the issue in the bipolar manner fashioned by Pennzoil. We believe that a middle position exists under these circumstances, and, further, that the jury properly was instructed on this middle position. The issue upon which the jury was instructed was whether Pennzoil "had reasonable grounds to believe that sufficient cause existed to justify the defendants' actions in discharging the plaintiff." Accordingly, the jury could have absolved Pennzoil of liability under its implied contract with Kestenbaum provided that Pennzoil had reasonable grounds to believe that sufficient cause existed to justify his termination. *See Crimm v. Missouri Pac. R.R.,* 750 F.2d 703, 713 (8th Cir.1984) (under Title

VII, employer need not prove that employee committed sexual harassment, employer only needs a reasonable belief that sexual harassment occurred). The trial court correctly denied Pennzoil's requested Instruction No. 15 because it erroneously suggested the jury could find good cause from the employer's subjective good faith belief as opposed to an objective standard of reasonable belief.

■ Furthermore, there was substantial evidence to support the jury finding that Pennzoil did not act upon reasonable grounds. In her deposition, Pennzoil's investigator admitted on cross-examination that her summary was not intended to stand alone, that it failed to differentiate between first-hand knowledge, attributed hearsay, or mere gossip or rumor, and no attempt was made to evaluate the credibility of the persons interviewed. Nevertheless, the only document reviewed by vice-president Rundle before he fired Kestenbaum was his investigator's summary of interviews. Moreover, he did not take a close look at the way the investigation had been handled, but relied upon the professionalism of his investigators. At trial, Kestenbaum presented an expert who testified that Pennzoil's investigators did not observe the standards of good investigative practice and who identified numerous deficiencies in the investigation.

■ Pennzoil claims further that the court erred in refusing to instruct the jury on "wide latitude" and "great scope" as standards for judging an employer's conduct when dealing with managerial employees. Pennzoil asserts Instruction No. 12 severely limited the potential conduct of the employer. Pennzoil argues that an instruction on "wide latitude" and "great scope," like Pennzoil's requested instruction concerning good faith belief, was necessary to inform the jury of the employer's position when determining the existence of good cause. We hold, however, that the trial court properly exercised its discretion in refusing the instruction because it did not supply any needed guidance to the jury. The requested instruction was properly the subject of argument for counsel. *See* SCRA 1986, 1–051.

■ *Refusal to Instruct on Asserted Defense Theories as Requested by Pennzoil.* Pennzoil challenges the court's refusal of its requested Instruction No. 100, or alternatively, No. 101, and claims the court erred in giving Instruction No. 8 instead. Pennzoil maintains that Instruction No. 8 was prejudicial in that it allegedly permitted Kestenbaum to present a statement of his case, while denying Pennzoil the opportunity to state its theory of the case. Instruction No. 8 explained the burdens of proof and the contentions of the parties in conformity with SCRA 1986, 13–302B. The portion of Pennzoil's requested instructions excluded from Instruction No. 8 were statements asserting that (1) the defendants had an obligation to investigate the charges of sexual harassment and to take appropriate and remedial action, (2) the investigation by Pennzoil was more thorough and was conducted by more experienced investigators than is normal in a personnel investigation, (3) the investigation revealed conduct inappropriate for the workplace which would constitute sexual harassment, and (4) Pennzoil's presentation of the charges against Kestenbaum were in sufficient detail so that he could understand them and he was given adequate opportunity to defend himself. We agree with the trial court that these statements simply constituted denials of the claims articulated by Kestenbaum. The trial court acted within its discretion in ruling that the statement, "[t]he defendants deny the contentions of the plaintiff", was sufficient and it was unnecessary to incorporate Pennzoil's requested instructions into the format of SCRA 1986, 13–302C. It is not error to deny requested instructions where the court gave instructions that adequately covered the issue. *Hudson v. Otero*, 80 N.M. 668, 459 P.2d 830 (1969). Early in this opinion we discussed the detailed instruction by which the jury was guided on the employer's required response to charges of sexual harassment.

The record indicates that Pennzoil had ample opportunity to express its affirma-

tive theories which were clearly stated in Instruction No. 8. We hold, therefore, that the instructions as given did not deprive Pennzoil of an opportunity to fairly state its theory of the case. Based upon our review of the instructions as a whole, we find that no prejudice resulted to Pennzoil.

*Refusal to Grant Pennzoil's Motion for New Trial.* The granting of a new trial is discretionary with the trial court. *State ex rel. State Highway Dep't v. Robinson,* 84 N.M. 628, 506 P.2d 785 (1973). Refusal to grant a new trial will only be reversed where it is found to be an abuse of discretion. *Id.*

■ Pennzoil first claims that several remarks during Kestenbaum's closing argument were inflammatory, misleading, and prejudicial. Specifically, Pennzoil refers to remarks made that referred to (1) Pennzoil's relation to the local community, (2) the court's grant of Pennzoil's motion for directed verdict on only six of the eight claims brought by Kestenbaum, and (3) the non-appearance of some of Pennzoil's witnesses. During Kestenbaum's closing, Pennzoil failed to raise any objection. "[A]ny objections to the argument of counsel should be made in time for the court to rule on them, and, if necessary, to correct them before the jury retires...." *Jackson v. Southwestern Pub. Serv. Co.,* 66 N.M. 458, 474, 349 P.2d 1029, 1039 (1960). This Court has recognized that in the proper case improper remarks made by counsel could necessitate reversal and award of a new trial, notwithstanding a failure to object. *Griego v. Conwell,* 54 N.M. 287, 222 P.2d 606 (1950). Pennzoil, however, had the burden to demonstrate to the trial court that its rights were prejudiced because the argument was improper and because the remarks were "reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case." *Apodaca v. United States Fidelity and Guar. Co.,* 78 N.M. 501, 502, 433 P.2d 86, 87 (1967) (quoting *Aultman v. Dallas Ry. & Terminal Co.,* 152 Tex. 509, 516, 260 S.W.2d 596, 600 (1953)). It was within the sound discretion of the trial court to conclude that Pennzoil failed to meet its requi-

site burden. In its order denying Pennzoil's motion for a new trial, the court opined that had Pennzoil timely objected a curative instruction could have been conveyed to the jury. Our review of Kestenbaum's closing argument supports the reasonableness of the trial court's conclusion that any alleged prejudicial effect of the improper remarks could have been cured by proper instruction. *See Jackson,* 66 N.M. at 474, 349 P.2d at 1039 (any objections to counsel's argument should be timely made, unless they are of such serious nature that a cautionary instruction would not cure the error).

■ Pennzoil also complains that relevant evidence admitted at trial caused prejudice to its case, in light of the fact that the court ultimately granted Pennzoil's motion for directed verdict on these issues. Pennzoil contends that, because evidence subsequently rendered irrelevant infected the record, it was deprived of a fair trial and, therefore, was entitled to a new one. Pennzoil relies upon (1) testimony regarding Pennzoil's subsequent treatment of certain Vermejo Park employees who were deposed by Kestenbaum and provided testimony unfavorable to Pennzoil's interest and (2) evidence regarding the value of land donated to the United States by Pennzoil and witness testimony which opined that the valuations were excessive and adverse to taxpayers' interests. The transcript references cited by Pennzoil fail to demonstrate evidence sufficiently prejudicial to support a finding that the trial court abused its discretion. Nothing pointed out by Pennzoil convinces us that the trial court acted unreasonably in determining that Pennzoil received a fair trial and was not entitled to a new one. *See Paternoster v. La Cuesta Cabinets, Inc.,* 101 N.M. 773, 689 P.2d 289 (Ct.App.1984) (abuse of discretion occurs when action taken is arbitrary and capricious or in excess of the bounds of reason).

Pennzoil's remaining claim, that the verdict is contrary to the weight of the evidence, is without merit. We have demonstrated earlier in this opinion that substantial evidence existed to support the jury's

decision. The trial court properly denied Pennzoil's motion for new trial. The appraisal of prejudice, if any, and the appraisal of the clear weight of the evidence are most appropriately left to the discretion of the court that observed the trial, heard the complaints and arguments of the movant, and, fortified with the necessary personal judgment and professional skills, passed upon the merits of the motion for a new trial.

Based upon the foregoing, the verdict of the jury and the judgment based thereon are affirmed.

IT IS SO ORDERED.

WALTERS, J., and SOSA, Senior Justice, concur.