**VELEGA SAVALI, Plaintiff,**

**v.**

**LEGISLATURE OF AMERICAN SAMOA, AINA SAOLUAGA
NUA, and TUILEFANO VAELA`A, Defendants.**

High Court of American Samoa
Trial Division

CA 131-99

April 28, 2000

Before KRUSE, Chief Justice, TUAOLO, Chief Associate Judge, and LOGOAI, Associate Judge.

Counsel: For Plaintiff, Katopau T. Ainu'u
For Defendant, American Samoa Legislature, Arthur Ripley, Jr.
For Defendants Ama Saoluaga Nua and Tuilefano Vaela'a,
Roy J.D. Hall, Jr.

ORDER DENYING IN PART AND GRANTING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Velega Savali ("Velega") filed a complaint on December 14, 1999, alleging wrongful discharge, violation of due process, and intentional infliction of emotional distress against defendants Ama Saoluaga Nua and Tuilefano Vaela'a (jointly the "Legislators"), as well as the Legislature of American Samoa ("Fono"). Velega seeks his reinstatment to his former position as Legislative Financial Officer ("LFO") with the salary and benefits he previously enjoyed in this position, award back pay and benefits from the date of his dismissal, and award compensatory damages. The Legislators filed an answer and counter-claim on January 14, 2000, in which they denied any wrongdoing and sought damages against Velega for incompetence, failure to perform work, and slander and libel. The Legislators then filed a motion for summary judgment on January 31, 2000. The Fono filed its answer and counterclaim on February 3, 2000, in which it also sought restitution for sums paid to Velega after his termination. Velega answered the counterclaims of all defendants on February 24, 2000, and

filed his opposition to the motion for summary judgment on March 28, 2000. At the hearing held March 30, 2000, the Fono joined the Legislators in their summary judgment motion. Counsel for all parties were present and argued the motion.

## Facts

For purposes of the motion the motion before us, we glean the following from the extent of the record before us: the Fono celebrated its 50th anniversary in October 1998. To commemorate the occasion, the 25th legislature established a committee consisting of members of both houses to plan and conduct the Golden Jubilee celebration. On January 27, 1999, the committee chairman submitted a report to the Senate showing that expenditures for the celebration had exceeded the approved budget of $100,000 by over half a million dollars. In response, the Senate established an investigative committee on February 3, 1999, to look into this mismanagement of public funds.

At the time of these events, Velega was employed as Legislative Financial Officer ("LFO") by the Fono. He held this position from 1995 until 1999. He did not appear to experience professional difficulties during these years until the Senate's investigation into the Golden Jubilee. At that point, Velega's standing changed dramatically when the investigative committee's report concluded that Velega had been at least partially responsible for authorizing the excessive Golden Jubilee expenses.

Based on the committee's report, the Senate passed resolution 26-15 on April 1, 1999, calling for Velega's resignation. However, President of the Senate Lutu Tenari S. Fuimaono ("Lutu"), for reasons not apparent on the record before us, rejected the resolution and refused to terminate Velega. Velega remained as LFO for about three more months, until Lutu travelled off-island. At that point, Velega was terminated on July 23, 1999 pursuant to a letter signed by the Legislators. Velega left the office and did not return to work. Upon his return from off-island, Lutu retained Velega on the payroll and continued to approve payment to Velega as if he were on paid leave. This state of affairs continued until Lutu, under pressure from other Fono members, halted compensation in November 1999. Velega has not secured other employment subsequent to termination.

## Discussion

### A. Summary Judgment

Defendants move for summary judgment pursuant to T.C.R.C.P. 56. Summary judgment is appropriate only when the pleadings and

supporting papers show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." T.C.R.C.P. 56; *Etimani v. Samoa Packing Co.*, 19 A.S.R.2d 1, 4 (Trial Div. 1991). In ruling on a summary-judgment motion, the court must view all pleadings and supporting papers in the light most favorable to the opposing party, treat the opposing party's evidence as true, and draw from such evidence the inferences most favorable to the opposing party. *Id.* We apply this standard to Velega's three causes of action.

B. Intentional Infliction of Emotional Distress

■ Velega asserts that his termination has damaged his reputation and has handicapped his ability to find other employment. Velega asserts that, in terminating him, the Legislators abused their authority to further their personal and political interests, and that such conduct was "malicious, outrageous, extreme, and exceeded all possible bounds of decency." Velega's hyperbole, however, fails to conceal the fact that he has alleged no conduct on which a claim of intentional infliction of emotional distress can be based.

Damages for the intentional infliction of emotional distress have been awarded in the context of terminations only where the employer's method of terminating the employee, or conduct accompanying the termination, was outrageous. Even a cursory glance at these cases will demonstrate that the employer's conduct must sink to despicable levels in order to provide a basis for abusive discharge. *See, e.g., Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 303-05 (5th Cir. 1989) (employer manipulated evidence to subject employee to accusation of crime in order to provide grounds for termination); *Crump v. P&C Food Markets, Inc.*, 576 A.2d 441, 445 (Vt. 1990) (lengthy interrogation without rest, coercion to sign untrue statement of culpability, and summary termination after 18 years of employment).

Velega has alleged no conduct that can give rise to an abusive discharge claim. The letter terminating Veiega, signed by both Legislators, is quite proper in tone. Velega has not alleged that either Legislator, or the Fono for that matter, ever maliciously attacked him verbally or in print. Velega merely alleges that he was fired for political reasons. Even if true, this assertion does not provide a basis for a claim of infliction of emotional distress. Accordingly, defendants are granted summary judgment against Velega's claim of intentional infliction of emotional distress.

C. Wrongful Discharge

Velega asserts that he was wrongfully discharged because his termination did not comport with: (1) the requirement that he be

terminated by mutual consent of the Speaker of the House and President of the Senate, (2) procedural safeguards on disciplinary actions against him, (3) contractual requirements of termination only for just cause, and (4) an implied covenant of good faith and fair dealing. We examine these bases for Velega's claim of wrongful termination in sequence.

*1. Termination by Mutual Consent of the Speaker and President*

■ Velega first takes issue with the procedure utilized by the Fono to discharge him. Velega and the Fono agree that he could be terminated by the mutual consent of the Speaker of the House and the President of the Senate. The statute to which they refer, however, does not explicitly provide for this procedure. A.S.C.A. § 2.0601 states that the Speaker and President jointly appoint the LFO, but makes no mention of the process required for his or her removal. The statute further states that the legislative finance office is responsible to the Fono, not merely to these two individuals.

Be that as it may, we acknowledge for obvious separation of powers reasons, wide discretion in the Fono to implement its internal procedures. If the legislative branch has decided that removal of the LFO may be accomplished by the same means as his appointment, a logical conclusion, there can be little quarrel with that determination.

It appears, however, that Velega asserts that his removal was not accomplished by proper means. Although not explicitly pled, we conjecture that he contends that only the permanent President of the Senate, and not the President Pro Tempore, can agree with the Speaker of the House to terminate an LFO. But this is erroneous as a matter of law. Senate Rule 9 provides that "[i]n the event of illness or absence of the President, the President Pro Tempore shall assume the duties of and be invested with the powers of the President." Thus, the President Pro Tempore of the Senate was functionally equivalent to the President while the latter was off-island. This leads to the inescapable conclusion that his concurrence with the Speaker of the House satisfied the procedure for terminating Velega pursuant to the letter of July 23, 1999.

*2. Procedural Safeguards on Disciplinary Actions*

Velega asserts that the process by which he was terminated violated procedural safeguards included in his employment contract. Velega, however, argues no procedural safeguards aside from the above mutual consent requirement and the following just cause requirement. Having asserted no independent procedural safeguards, this bald assertion of the same must fail.

### 3. Just Cause Requirement for Termination

■ Velega claims that his employment contract with the Fono required that he be terminated only for just cause. As a matter of law, this submission is in error.

In American Samoa, employment is presumed to be at will, and the employee can be fired without just or good cause, unless there exists an express or implied contractual provision restricting the employer's rights to terminate the employee. *Palelei v. Star Kist Samoa, Inc.,* 5 A.S.R.2d 162, 165 (Trial Div. 1987); *Banks v. American Samoa Government,* 4 A.S.R.2d 113, 118-20 (Trial Div. 1987).

Velega has pled no express just cause termination requirement in any written employment contract. According to A.S.C.A. § 7.0203, Fono employees are not career service employees. Velega thus does not enjoy the just cause requirement set out for the termination of career service employees in A.S.C.A. § 7.0801. He has demonstrated no just cause provisions in any materials related to his employment, such as an employee handbook or internal personnel guidelines. *See Palelei v. Star Kist Samoa, Inc.,* 5 A.S.R.2d at 165-166. In sum, Velega can point to no writing to establish a just cause requirement.

Instead, Velega appears to assert that just cause has been implied in his contract by the oral statements made by Lutu on the subject. Velega claims, and we take as true for purposes of summary judgment, that Lutu asserted that his termination required just cause on three occasions: on January 7, 1999 to Speaker of the House Nua; in February of 1999 to Senator Tuilefano; and on April 21, 1999, in conjunction with his rejection of the recommendation of Senate Resolution 26-15.

■ To begin, a public employer's oral promises of job security may provide a basis for including a just cause requirement in an employment relationship that is otherwise at-will. *Perry v. Sinderman,* 508 U.S. 593, 601-602 (1972). However, the employer must possess the statutory authority to modify the contract in order to imply the requirement. *Bennett v. Marshall Public Library,* 746 F. Supp. 671, 674 (W.D. Mich. 1990). As a matter of law, Lutu does not possess the authority to so modify Velega's contract, and his statements therefore do not establish a just cause requirement for termination.

■ The applicable statute, A.S.C.A. § 7.0203, excludes Fono employees from career service status, and thus denies them the protection afforded by the just cause requirement set out for the termination of career service employees in A.S.C.A. § 7.0801. This statutory scheme, enacted by the Fono as a whole, cannot be abrogated or modified by the unfounded statements of only one of its members, no matter how well-intentioned

those statements may be. In other words, Lutu, as a single legislator, did not possess the authority to unilaterally modify a statute crafted by the entire legislature so as to introduce a just cause termination requirement into Velega's employment relationship with the Fono.

■ It appears that this implied contract claim, which we have now rejected, provides Velega's only basis for asserting a just cause termination requirement. Velega has not alleged that he reasonably relied to his detriment on Lutu's statements concerning just cause. *Contra Shebar v. Sanyo Bus. Sys. Corp.*, 544 A.2d 377, 379-80 (N.J. 1988) (employee declined job offer from employer's competitor after employer promised job for life, but subsequently discharged employee). Velega similarly does not argue that he took or remained in the LFO position based on just cause assurances. *Contra Kestenbaum v. Pennzoil Co.*, 766 P.2d 280, 285 (N.M. 1988) (employee was promised long terra, permanent employment during initial negotiations). Promissory estoppel is thus likewise unavailable as a basis for the wrongful termination claim.

A course of conduct demonstrating a policy of termination only for just cause could help to establish the existence of the same in Velega's contractual relationship, but he has asserted none. *See, e.g., Kestenbaum*, 766 P.2d at 286 (employer's officials testified that company only fired permanent employees for good reason); *Morriss v. Coleman Co., Inc.*, 738 P.2d 841, 844 (1987) (employer failed to follow established methods of discharging employees). Furthermore, while Velega's 18 years of employment could assist in establishing a course of conduct, it alone is not sufficient to imply a just cause requirement. *See, e.g., Cleary v. Am. Airlines, Inc.*, 168 Cal. Rptr. 722, 729 (1980); *Pugh v. See's Candies, Inc.*, 171 Cal. Rptr. 917, 925-26 (1981); *Foley v. Interactive Data Corp.*, 254 Cal. Rptr. 211, 225 (1988).

In sum, Velega has failed to allege any facts upon which we could imply a just cause requirement for termination in his employment relationship with the Fono.

### 4. Implied Covenant of Good Faith and Fair Dealing

■ The implied covenant of good faith and fair dealing is a contract law doctrine that has been applied to employment contracts by approximately one fifth of the states. MARK A. ROTHSTEIN ET AL., EMPLOYMENT LAW § 9.6, at 537 (1994). Even if the covenant were to apply to employment relationships within the territory, it would not afford Velega a basis for recovery in this case.

In the present case, we "view the invocation of the implied covenant as a plaintiff's attempt to impose a just cause requirement on an employment

relationship as a matter of law, where, as a matter of fact, the relationship is at will, and [we] decline to adopt it for that reason." MARK A. ROTHSTEIN ET AL., EMPLOYMENT LAW § 9.6, at 537 (1994). Courts have held that a terminated employee "cannot use the covenant of good faith and fair dealing to *transform* a terminable-at-will contract into a terminable-only-for-cause employment contract by construing a discharge without cause as a breach of the covenant." *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1272 (9th Cir. 1990) (citing *Mundy v. Household Fin. Corp.*, 885 F.2d 542, 544 (9th Cir. 1989); *Foley v. Interactive Data Corp.*, 765 P.2d 373, 400 n.39 (Cal. 1988)); *see also McMahon v. Penn. Life Ins. Co.*, 891 F.2d 1251, 1256-57 (7th Cir. 1989). It appears that Velega is attempting precisely this kind of transformation. Having failed to establish that termination only for cause was a term included in his contract, Velega may not claim protection of the implied covenant of good faith and fair dealing with respect to his discharge.

## C. Due Process

Article I, Section 2 of the Revised Constitution of American Samoa provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law . . . ." Public employees possess liberty, and on occasion, property interests in their employment that cannot be taken by the state without due process.

### 1. Property Interest

Public employees with legally recognized interests in continued employment possess a property right in that employment that the state may not take without affording the employee due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). State law controls whether the public employee has a property interest in her employment. *Id.* The Constitution, in the case of American Samoa, controls whether due process has been afforded the employee.

> To have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

*Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). In *Roth,* the Court held that an assistant professor had no property interest in his job because the terms of the contract specified that it was to terminate at the end of the school year. In contrast, in *Perry v. Sinderman*, 408 U.S. 593, 599-600 (1972), the Court held that a due process claim by a former professor on the basis that, although untenured, he had alleged facts that a de facto tenure system, described in the faculty guide, could create a

property right in his employment. Thus the dismissal of such suit upon summary judgment motion was improper. *Id.*

In the present case, we have determined, in the previous section, that Velega's contract contained no guarantees of continued employment, whether express or implied. Such a guarantee is essential to the creation of a property interest in employment. Thus Velega may not, as a matter of law, assert a due process claim on the basis of a deprivation of a property right in employment against the Fono.

*2. Liberty Interest*

■ All public employees, even those without property interests in their employment, possess liberty interests in their reputations. This liberty interest cannot be taken in conjunction with termination without affording the employee due process. *Faumuina v. Am. Samoa Gov't Employees Ret. Fund*, 1 A.S.R.3d 112, 118 (Trial Div. 1997) (citing *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)).

The Supreme Court has held that a deprivation of a liberty interest in employment occurs if the charges attending dismissal are so stigmatizing that the former employee cannot secure new employment. Statements that the former employee failed to perform adequately do not constitute sufficient grounds for a due process claim. Accusations of dishonesty or immorality, on the other hand, can provide such grounds. *Roth*, 408 U.S. at 573. In order to trigger due process protections, the charges must be false, publicized, and provide the employee no chance to clear his name. *Id.*

Velega has not. alleged any specific accusations of immorality or dishonesty by the Legislators, or for that matter, any Fono member. However, construing the facts in his favor, Senate Resolution 26-15 could arguably be read to accuse Velega of a lack of integrity with respect to approving expenditures for the Jubilee celebration. The veracity of the report's findings are an issue of fact rather than law, and the findings must be viewed as false under the summary judgment standard. The report and its charges were obviously published, and Velega has asserted that the circumstances of his termination have prevented him from securing other employment. Accordingly, we assume, for purposes of summary judgment, that Velega was deprived of his liberty interest in reputation.

A public employee whose liberty interest in his reputation has been violated has the right to notice of and a hearing to clear his name. *Faumuina*, 1 A..S.R.3d at 118 (citing *Loudermill*, 470 U.S. at 546); *see also Constantineau*, 400 U.S. at 437. This hearing, however, does not affect his employment status.

We cannot determine from Velega's complaint whether he has had the opportunity to be heard with regards to his termination. The complaint at paragraph 42 states that "[n]ot since [the Legislators] manufactured Velega's purported termination has the Fono offered Velega an opportunity to be heard on this employment action." However, Velega asserts in a later affidavit that he was never afforded an opportunity to defend himself against accusations of mishandling funds. Once again, construing the facts in favor of the non-moving party, Velega has alleged sufficient facts to support his due process claim.

However, Velega should take note that even if he can prove a deprivation of his liberty interest at trial, the most he can hope for is a hearing before the Fono to clear his name. MARK A. ROTHSTEIN ET AL., EMPLOYMENT LAW § 9.6, at 537 (1994). He will have no other recourse by which he may seek to regain his position as LFO.

## Order

For the foregoing reasons we grant defendants' summary judgment motion on Velega's claims of intentional infliction of emotional distress and wrongful discharge, but deny the same for Velega's due process claim.

It is so ordered.